# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

HELEN L. BURGESS,           )
                         )
        Plaintiff,          )
                         )
v.                        )         No. 2:14-cv-371
                         )
CODMAN & SHURTLEFF, INC.,    )
                         )
        Defendant.     )

### MEMORANDUM OPINION AND ORDER

The defendant, Codman & Shurtleff, Inc. ("Codman" or defendant), filed a Motion for Summary Judgment, [Doc. 37]. The plaintiff has responded, [Doc. 46]. The matter is ripe for review. For the reasons that follow, the motion is DENIED.

## I. FACTS

The facts are taken in the light most favorable to the plaintiff as the nonmoving party and are as follows.[1] Codman is a medical device, pharmaceutical and consumer package goods manufacturer of medical supplies, including the device positioning unit and microcoil system at issue in this litigation. In September of 2013, plaintiff, after suffering a stroke, was diagnosed with a partially peripherally calcified aneurysm. On November 5, 2013, plaintiff underwent an aneurysm coiling procedure performed by Dr. Samuel O. Massey, III, an interventional

---

[1] This Court had difficulty determining the disputed facts in that the parties failed to follow the Scheduling Order, [Doc. 11], by filing separate statements of undisputed material facts. Due to the defendant's failure, the plaintiff then failed to respond in a separate document to each fact set forth by the defendant by either (1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (3) demonstrating that the fact is disputed, which this Court requires. However, this failure is excused. Nonetheless, because of the failure, it appears that many of the facts are not disputed. In addition, many facts are taken verbatim from the Joint Proposed Final Pretrial Order, [Doc. 65].

radiologist, utilizing a Micrus® Microcoil Delivery System and Presidio 10 Cerecyte Microcoil at the Johnson City Medical Center in Johnson City, Tennessee (the "Surgery").

Dr. Massey has testified that during the procedure he became concerned about one of the loops at the base of Ms. Burgess's aneurysm and pulled the coil back slightly to readjust positioning in order to obtain a more ideal position. However, as he pulled back for repositioning, the coil suddenly became detached from the microcatheter resulting in approximately one-third (1/3) of the coil being placed in the aneurysm and two-thirds (2/3) of the coil remaining in the catheter. Dr. Massey further testified that after a physician places a coil within an aneurysm, an electrical current is purposely generated that dissolves the fiber and detaches the coil from the microcatheter into the aneurysm.

Pursuant to Dr. Massey's testimony, no electrical current was generated during the plaintiff's procedure and the coil was prematurely detached at what appeared to be the detachment zone, leaving the coil partly outside the aneurysm. Dr. Massey testified that he made several attempts to snare the coil outside the aneurysm, including aspiration of the microcatheter and the use of a lasso or snare over the back end of the microcatheter and the coil, together with attempts to pull the whole device back. Dr. Massey testified that after multiple attempts to snare the coil were unsuccessful he elected to stent the remaining portion of the coil against the wall of the vessel in an effort to limit clot formation, utilizing five stents, and stopped the procedure.

Dr. Kenneth Smith, the plaintiff's treating physician, reviewed the plaintiff's medical records and angiogram.  He determined that the aneurysm is not coiled and that the procedure was not successful because there is more than three millimeters of the aneurysm remaining, which, according to Dr. Smith, is the industry standard.  Dr. Smith opined that the plaintiff faces two risks based on the failed procedure.  First, the plaintiff has a continued risk of transient

ischemic attacks, ("TIAs"). Since the failed coiling procedure, the plaintiff has suffered from five TIAs (November 14, 2013; November 21, 2013; February 17, 2014; April 17, 2014; and April 21, 2014). Second, if the aneurysm enlarges and bleeds, the plaintiff faces a risk of death. Dr. Smith observed that blood continues to flow within the aneurysm due to the failed procedure. Thus, it is still subject to pressure which is a contributor to why it ruptures. In addition, the aneurysm's size poses a risk that it could serve as a reservoir for clots to form. Dr. Smith testified that had the coiling procedure been successful, these risks would have been avoided.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient

evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

Codman moves for summary judgment on three grounds. It asserts the plaintiff cannot (1) "establish 'general' or 'specific causation,' which is dispositive of all causes of action," (2) "prove that Microcoil was defective in design or manufacture," and (3) "show that Codman acted recklessly in its manufacture, marketing and promotion of the Delivery System and Microcoil to warrant punitive damages." [Doc. 39, pgs. 1 and 2]. The Court will address each issue in turn, albeit in a different order than presented.

First, the plaintiff agrees that she cannot show any reckless conduct to support a punitive damages claim. [Doc. 46, pg. 2]. Plaintiff asserts she never made a claim for punitive damages. As such, the Court concludes punitive damages cannot be awarded in this case.

Second, the defendant claims that the plaintiff cannot prove the Microcoil was defective in design or manufacture. Its argument in support of this assertion is that the plaintiff does not have a qualified expert to testify to such. To be sure, plaintiff's experts, Mr. Bruley and Dr. Lucas, opine that the device is not defective. Bruley 39:12-19; Lucas 25:14-16. However, Dr. Massey testifies that it is. [Doc. 46-1, Ex. A, ¶ 3[2] and Doc. 33-1, pgs.147-48]. Nonetheless, the defendant argues that Dr. Massey is unqualified to offer this opinion. This Court has affirmed the magistrate judge's decision that Dr. Massey is qualified to offer such an opinion and that the opinion is reliable; thus, it is admissible. Therefore, the conflicting, admissible testimony creates a genuine issue of material fact. This issue is for the jury to decide.

Third, the defendant argues that the plaintiff cannot prove general or specific causation. The only authority the defendant offers for the assertion that the plaintiff must prove both general and specific causation are toxic tort cases or cases applying state law other than Tennessee's. This is not a toxic tort case. Thus, the Court will apply the standard Tennessee products liability principles and law to the case at bar.

The Tennessee Supreme Court in *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527 (Tenn.1996), explained that both a consumer expectation test and a prudent manufacturer test are provided for under the Tennessee Products Liability Act's definition of "unreasonably dangerous." *Id.* at 531–32. The Tennessee Products Liability Act also provides that the term, "defective condition," means a condition of a product that renders it unsafe for normal or

---

[2] The defendant argues that this affidavit contains inadmissible statements and should be stricken. This Court disagrees. The key testimony, i.e. the opinion that the device is defective, has been ruled admissible in this Court's previous Order, [Doc. 63].

anticipatable handling and consumption. Tenn. Code Ann. § 29–28–102. Whether the consumer expectation test or the prudent manufacturer test is utilized, however, the Tennessee Supreme Court has ruled that the burden remains on plaintiff in a products liability action to establish injury as a result of a defective or unreasonably dangerous product. *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d at 533; *Goins v. Clorox Co.*, 926 F.2d at 561; *see also Browder v. Pettigrew*, 541 S.W.2d 402 (Tenn.1976); *Ford Motor Company v. Lonon*, 398 S.W.2d 240 (Tenn. 1966); *Olney v. Beaman Bottling Co.*, 418 S.W.2d 430 (Tenn. 1967); Restatement (2d) Torts § 402A.

In addition, the plaintiff must prove that the defect or fact that the product is unreasonably dangerous proximately caused plaintiff's claimed injuries. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Under Tennessee products liability law, it is sufficient to establish causation if it is shown that the conduct of defendant proved a substantial factor in causing the harm. *Ricker v. Zinser Textilmaschinen GmbH*, 506 F. Supp. 3 (E.D. Tenn. 1978), *aff'd sub nom.* 633 F.2d 218 (6th Cir. 1980). The issue of proximate cause is for the jury's determination unless the facts and inferences establish beyond dispute that all reasonable men would agree on the outcome. *Frady v. Smith*, 519 S.W.2d 584 (Tenn. 1974); *Kroger Co. v. Giem*, 387 S.W.2d 620 (Tenn. 1964); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276 (Tenn. Ct. App. 1977).

The defendant argues that the plaintiff cannot show that the defective device caused the plaintiff's injuries. It is true that there is no testimony that states the defective device caused the plaintiff's subsequent TIAs or caused her increased risk of the aneurysm rupturing and causing death. However, Dr. Massey testified that because the device was defective he could not complete the coiling procedure. [Doc. 46-1, Ex. A, ¶ 3 and Doc. 33-1, pgs.147-48]. Dr. Smith testified that the failed coiling procedure caused the plaintiff's injuries. Smith: 39:4-40:24; [Doc.

33-2, pgs. 27 and 49]. Based on the doctors' testimony, a reasonable jury could agree that the defective device was a substantial factor in causing the plaintiff's injuries. The jury must weigh Drs. Massey and Smith's testimonies with other testimony that the plaintiff was predisposed to these injuries. In sum, this issue is a jury question.

## IV. CONCLUSION

For the reasons stated above, the motion is DENIED.

ENTER:


_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
